**MIDWESTERN WHOLESALE DRUG, INC. and Commercial Union Insurance Company of America, Appellants,**

v.

**GAS SERVICE COMPANY, Appellee.**

**No. 99–70.**

United States Court of Appeals, Tenth Circuit.

May 21, 1971.

Glenn E. McCann, Kansas City, Mo. (Knipmeyer, McCann & Millett, Kansas City, Mo., L. M. Cornish, and Glenn, Cornish & Levenberger, Topeka, Kan., with him on the brief), for appellants.

Leonard O. Thomas, Kansas City, Kan. (L. D. McDonald, Jr., Larry E. Benson, Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., and Warren W. Shaw, Shaw, Hergenreter & Quarnstrom, Topeka, Kan., with him on the brief), for appellee.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from a judgment for the defendant, Gas Service Company, in a negligence action tried to a jury. Plaintiff-appellant, Midwestern Wholesale Drug, Inc., was the owner and operator of a wholesale drug business located in Topeka, Kansas, insured against fire by the other plaintiff, Commercial Union Insurance Company of America. A fire occurred which destroyed the drug company's building and its contents in an amount in excess of the insurance coverage. The insurance company, also an appellant, paid Midwestern the insured portion of the loss and became subrogated in the amount paid. The defendant is a company engaged in servicing and inspecting heating equipment, and was engaged to perform such services by the drug company.

The parties stipulated damages before trial and only the liability issue was tried and, as indicated, the jury found for the defendant. In their complaint, plaintiffs alleged two separate counts of negligence. In the first it is alleged that the fire was caused by a defective heater which was inspected by defendant's serviceman a few months prior to the fire at which time this serviceman should have perceived and warned plaintiffs about the dangerous condition of the heater. In the second count it is alleged that plaintiffs' damages were aggravated as a result of defendant's inability after the fire started to promptly shut off a gas valve under its control and located outside plaintiffs' building.

The central issue on this appeal concerns the allegation that a defective heater inspected by defendant caused the fire. This heater, extensively damaged in the fire, was admitted into evidence as Exhibit 89. A similar, but undamaged, heater also taken from the building after the fire was admitted as Exhibit G–3. This heater, Exhibit G–3, is the primary source of contention. Defendant acquired this heater after the fire, and employed experts to run an extensive series of experiments on it. Plaintiffs' experts, as did defendant's experts, ran similar experiments on Exhibit 89, the heater allegedly responsible for the fire. At trial plaintiffs strenuously objected to the introduction of evidence and testimony concerning Exhibit G–3, the undamaged heater taken from the building, arguing that since that heater was not alleged to be the cause of the fire such evidence was immaterial and tended to confuse rather than enlighten the jury.

Defendant counters that the experiments on Exhibit G–3 were admissible for purposes of illustrating the normal operation of a heater of the same make

and model as that which allegedly caused the fire, and for purposes of laying a foundation for the testimony of their expert witnesses. The trial court admitted a great deal of testimony concerning heater G–3 for purposes of illustration. In its instructions, it cautioned the jury that such evidence was only to be considered for purposes of illustration. The bulk of testimony concerning Exhibit G–3 was to the effect that such heaters contain a limit switch which is designed to shut off the heater when internal temperatures reach a particular level. There was testimony, based on experiment, that such heaters are designed to automatically shut off at a temperature below that which would have to be reached before a rust particle in the heater could be heated to the point at which, if blown from the heater, it would ignite paper or cellophane. Furthermore, there was testimony that these limit switches are set and sealed by the manufacturer and that ordinary prelighting inspections such as performed by gas company inspectors would not reveal defects in the limit switch.

Plaintiffs' theory of the case was that corrosion holes in the heat exchanger of Exhibit 89 were present and apparent when the heater was inspected by defendant's serviceman on September 27, 1965, and that the fire was caused by hot rust and corrosion particles being blown from the heat exchangers of Exhibit 89 into nearby paper and cellophane. Plaintiffs argue that the evidence of out-of-court experiments on the other heater, Exhibit G–3, should not have been admitted, citing Navajo Freight Lines v. Mahaffy, 174 F.2d 305 (10th Cir.), for the proposition that such experiments are not to be admitted absent a showing of substantially similar conditions.

■■ Navajo Freight Lines does not compel the result urged by plaintiffs on this appeal. Defendant did show that the two heaters in question were alike as to make and model. The purpose of the challenged evidence was to show that in order for the fire to have been caused in the manner alleged by plaintiffs, there would have to have been a malfunction in the limit switch of heater 89. Since such a malfunction would not have been discovered in the course of an inspection such as that performed by defendant's serviceman, and since the nature of the limit switch was such that no inspection short of dismantling the entire heater would have disclosed such a defect, the introduction of the evidence in question was neither immaterial nor confusing. Under this theory of the case, and under Navajo Freight Lines, it was necessary for defendant to show, as it did, the similarity of make, model, the limit switch setting, and the validity of the testing. It should be reiterated that the admission of such testing is largely within the discretion of the trial judge. Navajo Freight Lines v. Mahaffy, 174 F.2d 305 (10th Cir.); Derr v. Safeway Stores, Inc., 404 F.2d 634 (10th Cir.). In Millers' National Ins. Co. v. Wichita Flour Mills Co., 257 F.2d 93 (10th Cir.), this court considered an objection very much like that raised by plaintiffs here. In Millers' we held that evidence of out-of-court experiments is properly admitted to illustrate and clarify the testimony of expert witnesses. Defendant here has never contended that the experiments on heater G–3 were introduced for any purpose other than to render intelligible the expert testimony regarding the normal operation of such heaters. For such purposes the evidence in question was admissible.

■ Plaintiffs also allege error in the trial court's refusal to grant their motion for a directed verdict on Count II and the giving of certain special interrogatories. In Count II plaintiffs alleged that their damages were aggravated as a result of defendant's failure to properly maintain a gas shutoff valve located outside plaintiffs' warehouse. There is little doubt that the plaintiffs did establish improper maintenance of this valve. They did not, however, show that defendant's negligence in this respect was the proximate cause of any damage. In fact, the evidence was to

the contrary, tending to show that the gas escaping from the line controlled by this valve burned harmlessly during the fire. Under these circumstances, it would have been improper for the trial court to direct a verdict on Count II, since plaintiffs must show proximate cause as well as negligence.

It was not error to give the jury compound interrogatories combining the questions of negligence and proximate cause. The interrogatories were not confusing. The wording of such interrogatories is within the discretion of the trial judge. De Eugenio v. Allis-Chalmers Mfg. Co., 210 F.2d 409 (3d Cir.). That discretion was not abused by the giving of these compound interrogatories. The questions presented were clear and they were not inconsistent with the court's instructions. We also find no error in the giving or the wording of instruction No. 5.

Finally, plaintiffs object to the giving of instruction No. 6, concerning the standard of care owed by defendant. Plaintiffs contend that the defendant owed a greater duty than the court instructed with regard to its inspection of the heater. The trial court said in part in No. 6:

"  *   *   * In this case, negligence means the lack of ordinary care under the existing circumstances. As applied to the defendant, it means the failure to do something that a reasonably careful gas distributor engaged in the same business would do or the doing of something by a gas distributor that a reasonably careful gas distributor engaged in the same business would not do. The degree of care must be equal to the foreseeable danger reasonably to be anticipated, measured by all the facts and circumstances. The failure to exercise such care on the part of defendant's employee Graham in making such an inspection would be negligence within the meaning of the law."

In a recent case decided by the Supreme Court of Kansas, Hendrix v. Phillips Petroleum Co., 203 Kan. 140, 453 P.2d 486 (1969), an instruction virtually identical to instruction No. 6 was approved by the Kansas Supreme Court in a case involving a gas distributor. Accordingly, the statement of defendant's duty in view of the allegations as to the cause of the fire in plaintiffs' first cause of action was a correct statement of the controlling substantive law. See also, Tyler v. Dowell, Inc., 274 F.2d 890 (10th Cir.).

Affirmed.