[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 14, 2004
THOMAS K. KAHN
CLERK

No. 03-16540

D. C. Docket No. 02-00220 CV-OC-10-GRJ

DIANE WILBUR,

Plaintiff-Appellant,

versus

CORRECTIONAL SERVICES CORP.,
a foreign corporation,
d.b.a. Cypress Creek Correctional Facility,
YOUTH SERVICES INTERNATIONAL, INC.,
a foreign corporation and Subsidiary of
Correctional Services Corporation,
d.b.a. Cypress Creek Correctional Facility
in Lecanto, Florida,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

**(December 14, 2004)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

DUBINA, Circuit Judge:

Appellant Diane Wilbur appeals from the district court's order granting judgment as a matter of law in favor of Appellees Correctional Services Corporation et al. ("CSC") on Wilbur's hostile work environment, quid pro quo sexual harassment, and retaliation claims, brought pursuant to Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11 (2002).[1] Exercising its discretion under Rule 49(b), Fed. R. Civ. P., the district court granted judgment as a matter of law, notwithstanding a general jury verdict awarding Wilbur damages, on the ground that the general verdict was irreconcilable with the jury's answers to the nine special interrogatories that were also submitted to the jury. For the reasons that follow, we hold that the district court did not abuse its discretion by entering judgment as a matter of law in favor of CSC.

## I. BACKGROUND

---

[1]The Florida Civil Rights Act was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII. *See, e.g., Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). As such, the district court did not independently analyze Wilbur's Florida Civil Rights Act claims, and they will not be independently analyzed in this opinion.

CSC maintains a juvenile correctional facility in Citrus County, Florida ("Cypress Creek"). In 1997, Wilbur began working for CSC at its Cypress Creek facility. In September 2000, she was promoted to Case Manager Supervisor, a position that required her to oversee the efforts of seven case managers who prepared juvenile offenders for successful return to society.

In November 2000, William Newkirk was promoted to Assistant Facility Administrator at Cypress Creek and became Wilbur's immediate supervisor. Wilbur contends that, in December 2000, Newkirk and Eric Gallon, Newkirk's supervisor, devised a plan known between them as "the hook up," in which Gallon would pursue romantic relations with a female coworker and Newkirk would pursue romantic relations with Wilbur. Wilbur maintains that, beginning in December 2000, Newkirk repeatedly expressed his romantic intentions toward her, and that she rejected all of his advances. According to Wilbur, Newkirk engaged in a pattern of offensive behavior towards her, in addition to propositioning her, which included, among other things, touching her leg during meetings, turning off the light in her office and touching the sides of her body, and suggesting that she and a female coworker wear dresses "up to [their] ass[es]."

Wilbur contends that, as a result of rejecting Newkirk's advances, she was subjected to a hostile work environment, and that, when she complained to Gallon

3

in February 2001, she was informed that her job would be easier if she would "get hooked up" with Newkirk. Wilbur further contends that she informed Gallon at this meeting that the "hook up" was not going to happen. Then, according to Wilbur, after her meeting with Gallon, Newkirk attempted to terminate her employment, but Gallon told her to return to work before she had left the building. Later in February 2001, Wilbur asserts that she complained of sexual harassment to CSC's human resources department.

Wilbur claims that Newkirk and Gallon subjected her to a series of humiliating and demeaning acts of sexual harassment, including: (1) placing "sign-in/sign-out" and dress requirements on Wilbur that were not imposed on other similarly-situated employees; (2) openly and continually referring to women, including Wilbur, as "bitches"; (3) discussing in the presence of Wilbur which women in the facility Newkirk and Gallon would like to "do" sexually; (4) touching Wilbur on the leg and waist; and (5) frequently addressing Wilbur in an aggressive or humiliating manner. According to Wilbur, this harassment ultimately culminated in her termination on May 25, 2001.

CSC disputes Wilbur's portrayal of the facts leading up to her termination. According to CSC, Wilbur had a history of problems with her supervisors prior to the fall of 2000, and that her termination directly resulted from her interference

4

with an internal investigation of an allegation that a youth counselor at CSC had engaged in inappropriate sexual conduct at Cypress Creek with one of the case managers Wilbur supervised. As to Newkirk's attempt to terminate her, CSC claims that, as she was leaving the facility following her termination, she hugged Newkirk and told him that her termination was not his fault.

Moreover, CSC denies that Wilbur was sexually harassed, and also denies that she complained about any sexual harassment until after her termination. CSC concedes that Wilbur lodged a complaint with CSC's human resources department in February 2001, but asserts that her complaint addressed only Newkirk's failed attempt to terminate her employment and some concerns of the case managers she supervised regarding the scope of their responsibilities, and that she did not complain about sexual harassment. CSC also notes that Newkirk, who no longer works for CSC, claims that he was not aware of Wilbur's allegations of sexual harassment against him until his deposition was taken a few months before trial.

In July 2002, Wilbur initiated this action, seeking both compensatory and punitive damages, on the grounds that CSC had created a sexually hostile work environment, engaged in quid pro quo sexual harassment, and retaliated against

5

her for her good faith complaints of sexual discrimination.[2] CSC denied the substance of Wilbur's claims and also raised the affirmative defense that it could not be held liable for creating a hostile work environment, because it exercised reasonable care to prevent and correct any sexually harassing behavior and Wilbur failed to exercise reasonable care to avoid harm.

In July 2003, the district court entered an order granting in part and denying in part CSC's motion for summary judgment. While the court declined to dismiss any of Wilbur's Title VII claims, the court narrowed the scope of her quid pro quo and retaliation claims by concluding that, among the wrongs Wilbur alleged she was subjected to, only her actual termination could constitute a "tangible employment action" for purposes of either claim. With respect to Wilbur's hostile work environment claim, the court concluded that there was a material issue of fact as to whether CSC's conduct towards Wilbur was sufficiently severe or pervasive to alter the terms and conditions of her employment. Wilbur has not appealed from the court's summary judgment order.

---

[2]In her amended complaint, Wilbur also complained of racial discrimination, intentional infliction of emotional distress, and negligent training, supervision, and retention. In June 2003, Wilbur voluntarily dismissed her racial discrimination claims, and the district court, in granting in part CSC's motion to dismiss the complaint, dismissed Wilbur's intentional infliction of emotional distress and negligent training, supervision, and retention claims. Wilbur has not alleged in this appeal that the district court erred in dismissing any of these claims.

6

The case was tried to a jury in August 2003. During the trial, the court granted CSC's oral motion for judgment as a matter of law as to Wilbur's claim for punitive damages. The court then submitted to the jury a ten-question special interrogatory verdict form. On the form, Questions 1 through 5 addressed Wilbur's hostile work environment claim and CSC's affirmative defense to that claim, Questions 6 and 7 addressed Wilbur's quid pro quo sexual harassment claim, and Questions 8 and 9 addressed her retaliation claim. In Question 10, the jury was asked to determine whether Wilbur was entitled to damages for emotional distress and mental anguish, and, if so, how much she was entitled to receive. The jury was instructed that, if they found for Wilbur on Question 10, Wilbur would also be awarded $24,000 in compensatory damages for back pay and benefits.

The court's interrogatories and the jury's responses were as follows:

**Did you find from a preponderance of the evidence:**

1. That the Plaintiff was subjected to a hostile or abusive work environment because of her sex or gender?

Answer Yes or No      **No**

2. That such hostile or abusive work environment was created or permitted by a supervisor with immediate or successively higher authority over the Plaintiff?

Answer Yes or No      **No**

7

3. That the Plaintiff suffered damages as a proximate or legal result of such hostile or abusive work environment?

Answer Yes or No          **No**

4. That the Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior in the work place?

Answer Yes or No          **Yes**

5. That the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Defendant to avoid or correct the harm?

Answer Yes or No          **Yes**

6. That the Plaintiff was subjected by her supervisor or supervisors to a quid pro quo sexual demand or threat (as those terms are explained in the Court's instructions)?

Answer Yes or No          **Yes**

7. That the Plaintiff's employment was terminated because of her rejection of the quid pro quo sexual demand or threat?

Answer Yes or No          **No**

8. That the Plaintiff in good faith asserted claims or complaints of sex or gender discrimination?

Answer Yes or No          **Yes**

9. That the Plaintiff was then discharged from her employment because of her assertion of such claims or complaints?

Answer Yes or No          **No**

10. That the Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?

| | |
|---|---|
| Answer Yes or No | **<u>Yes</u>** |
| If your answer is Yes, in what amount? | **<u>$25,000</u>** |

The jury's answers show that the jury flatly rejected Wilbur's hostile work environment claim against CSC, and, in any event, that the jury accepted CSC's affirmative defense with respect to this claim. With respect to Wilbur's quid pro quo sexual harassment and retaliation claims, the jury found in Questions 6 and 8 that Wilbur was subjected to a quid pro quo sexual demand or threat, and that she asserted claims of sex discrimination in good faith; however, the jury found in Questions 7 and 9 that neither the quid pro quo sexual demand nor her asserted claims of sex discrimination caused her termination. Notwithstanding the jury's total rejection of Wilbur's hostile work environment claim and its negative responses to Questions 7 and 9, the jury nonetheless concluded in Question 10 that CSC should pay Wilbur damages in the amount of $25,000 for her emotional pain and mental anguish.

After the jury delivered its verdict, and before the jury was discharged, Wilbur's counsel recognized this inconsistency and, at sidebar, alerted the court that it was possible to conclude that the jury had not found the requisite facts supporting the imposition of liability, but had nevertheless awarded damages. Wilbur's counsel asked the court to resubmit the matter to the jury for further

consideration. Before CSC's counsel responded, the court declined this request and ruled that the motion would be resolved on motion for judgment as a matter of law. The court then added $24,000 to the jury award, representing the stipulated amount of back pay and benefits, and directed the clerk to enter judgment for Wilbur in the amount of $49,000.

In September 2003, CSC moved for judgment as a matter of law, or, in the alternative, for a new trial. The court granted CSC's motion and entered judgment as a matter of law. In doing so, the court noted that substantial evidence supported the jury's responses to the liability issues presented in Questions 1 through 9, that these responses were "entirely consistent" with each other, and that only the award of damages, in response to Question 10, was inconsistent with the remainder of the verdict. [R3 – 79 – 4]. The court recognized that the jury's responses to Questions 1 through 5 precluded any argument that the jury's award could reasonably relate to Wilbur's hostile work environment claim. Addressing Wilbur's remaining claims, the court reiterated its holding from its summary judgment order that "the only tangible employment action at issue in this case was the Plaintiff's ultimate termination," and thus concluded that the jury's negative responses to Questions 7 and 9 precluded, as a matter of law, an affirmative

10

response to Question 10.  [R3 – 79 – 11].  The court construed Question 10 as a general verdict and the remaining questions as special interrogatories.

Applying Rule 49(b) of the Federal Rules of Civil Procedure, the court concluded that, where the jury's answers to special interrogatories are consistent with each other but inconsistent with a general verdict, it had discretion to enter judgment in accordance with the special interrogatories, notwithstanding the general verdict.

On appeal, Wilbur does not challenge the sufficiency of the evidence supporting the jury's verdict, but instead challenges the district court's interpretation of it.  Specifically, Wilbur contends that the district court erred in concluding that the jury's negative responses to Questions 7 and 9 precluded its finding of liability in Question 10, and that the court should either re-enter its initial judgment in her favor for $49,000, or at least award her a new trial.  In addition, Wilbur contends that the district court erred in granting CSC's oral motion for judgment as a matter of law with respect to her punitive damages claim.

## II.  ISSUES

1.  Whether the district court erred in concluding that the jury returned a general verdict inconsistent with its answers to special interrogatories.

2.  Whether the district court abused its discretion by entering judgment as a

11

matter of law in favor of CSC on the liability issues presented to the jury.

3.  Whether the district court erred in granting judgment as a matter of law in favor of CSC as to Wilbur's claim for punitive damages.

## III.  STANDARD OF REVIEW

As a general rule, we review *de novo* a district court's grant of judgment as a matter of law, applying the same legal standards used in the district court. *Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004). However, when a district court enters judgment as a matter of law on the ground that a jury's answers to special interrogatories are consistent with each other but inconsistent with a general verdict, we review only for an abuse of discretion. *Phillips Chem. Co. v. Hulbert*, 301 F.2d 747, 751 (5th Cir. 1962);[3] *accord Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993).  Pursuant to Rule 49(b), a trial court, upon discovering such an inconsistency, has the option of either (1) directing entry of judgment on the special verdicts, notwithstanding the inconsistent general verdict; (2) returning the jury for further deliberations; or (3) ordering a new trial.  *See, e.g., Phillips Chem. Co.*, 301 F.2d at 751.  The principal limitation on the court's

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

discretion is that it "must be exercised in light of the circumstances under which the inconsistency arises." *Id.*

While the district court's application of Rule 49(b) is reviewed only for abuse of discretion, its threshold determination that the jury returned a general verdict inconsistent with its answers to special interrogatories is a mixed question of law and fact, *Wilks*, 5 F.3d at 415, and, as such, it is subject to plenary review. *Bickerstaff Clay Prods. Co. v. Harris County*, 89 F.3d 1481, 1486 (11th Cir. 1996) ("Questions of law and mixed questions of law and fact are reviewed *de novo*."); *accord Wilks*, 5 F.3d at 415 ("We review de novo the trial court's determination that the jury returned a general verdict inconsistent with its answers to special interrogatories.").

## IV. DISCUSSION

A.    *The district court did not err in concluding that the jury returned a general verdict that was inconsistent with its answers to special interrogatories*

A verdict contains an inconsistency if answers given by the jury "may [not] fairly be said to represent a logical and probable decision on the relevant issues as submitted." *Aquachem Co. v. Olin Co.*, 699 F.2d 516, 521 (11th Cir. 1983) (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)). In determining whether an inconsistency exists, the court should "refer to the entire

13

case–pleadings, evidence, argument, jury instructions–and not just to the jury's answers themselves." *Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.*, 898 F.2d 1514, 1521 (11th Cir. 1990).

When faced with a jury verdict containing an apparent inconsistency, the court shall "make all reasonable efforts to reconcile [the inconsistency]." *Boczar v. Manatee Hosps. & Health Sys., Inc.*, 993 F.2d 1514, 1516 n.5 (11th Cir. 1993) (quoting *Burger King v. Mason*, 710 F.2d 1480, 1489 (11th Cir. 1983)). "[I]f there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Griffin*, 471 F.2d at 915. However, the district court has no authority to strain to reconcile an inconsistency when it is not reasonable to do so, and the court "[is] not empowered to fill in facts omitted from the answer to a special interrogatory." *Burger King*, 710 F.2d at 1489.

In challenging the district court's conclusion that the jury's affirmative response to Question 10 is inconsistent with its preceding responses, Wilbur raises several points of alleged error,[4] none of which have any merit.

---

[4]Wilbur also asserts that CSC waived any Rule 49(b) challenge to the verdict because CSC failed to object before the jury had been discharged. We reject this argument. As a general rule, a party must raise a Rule 49(b) challenge to the form of the verdict and the jury's answers at the time they are announced by the jury, and failure to do so constitutes waiver. *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974). However, the circumstances of this case make clear that any objection would have been futile. *Cf. Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d

Wilbur first advances a "concurrency" theory, through which, Wilbur contends, the jury could have answered Questions 7 and 9 in the negative and nonetheless awarded relief if it concluded that both of the causes identified in Questions 7 and 9, acting in concert, resulted in her termination. Under Wilbur's theory, because Question 7 asked the jury to consider whether she was terminated *because of* her rejection of a quid pro quo sexual demand and Question 9 asked the jury to consider whether she was terminated *because* she complained of sex discrimination, the jury could have answered both questions in the negative and still awarded relief if it concluded that each was a substantial factor, if not a "but-for" cause of her termination.

Wilbur's concurrency theory is directly contradicted by the portion of the court's instructions to the jury that addressed the causation issue. This portion of

---

1322, 1329 (11th Cir. 1999) (recognizing futility exception to Fed. R. Civ. P. 51). As previously discussed, after the jury delivered its verdict, Wilbur's counsel recognized the inconsistency and requested that the district court tender the case back to the jury for further deliberations. Before counsel for CSC made any response, the district court denied this request, stating:

> It may well be that some intervention by the Court with respect to the verdict is necessary, but I don't intend to attempt to reinstruct them or send them back for further deliberations. I'll discharge the jury.

In light of this comment, in which the district court made clear that it was aware of the potential inconsistency but that it had no intention of resubmitting the case to the jury, we reject the contention that CSC waived its challenge to the verdict by failing to object. To find otherwise means that CSC was required, solely for the sake of formality, to challenge the same matter that the district court had expressly ruled on an instant before.

the instructions, which was both read to the jury and provided to the jury in written form, read as follows:

> For an adverse employment action to be "causally related" to statutorily protected activities it must be shown that, but for the protected activity, the adverse employment action would not have occurred. Or, stated another way, <u>it must be shown that the protected activity by the Plaintiff was a substantial, motivating cause that made a difference in the Defendant's decision</u>.

[R3 – 67 – 13]. (emphasis added); *see Royal Cup, Inc.*, 898 F.2d at 1521 (holding that the court must consider the entire case, including, among other things, jury instructions, in considering whether an inconsistency exists). The jury was thus instructed to consider in each question whether Wilbur's protected activity was a factor, rather than the exclusive factor, leading to Wilbur's discharge.

"We presume that a jury follows the instructions given to it by the district court." *United States v. Bennett*, 368 F.3d 1343, 1351 (11th Cir. 2004). And Wilbur has offered nothing to rebut this presumption. Accordingly, the district court properly concluded that the jury "necessarily considered and rejected a finding that the Plaintiff's protected activities taken together brought about her termination." [R3 – 79 – 9].

Wilbur next posits that, in light of the district court's instruction addressing causation, Questions 7 and 9 were general verdicts, as opposed to special

16

interrogatories, on the ground that both questions "conflated two distinct factual issues," i.e., whether either CSC's quid pro quo sexual demand or Wilbur's complaint of sexual discrimination was (1) a but-for cause or (2) a substantial motivating factor underlying CSC's decision to terminate Wilbur's employment. In making this argument, however, Wilbur has misconstrued the district court's instruction, which merely provided the jury with two alternative methods of considering the test for factual causation.

Moreover, even assuming that the court's instruction created two distinct factual issues for the jury to resolve in Questions 7 and 9, the court did not create a multiple general verdict scenario. It must be remembered that a general verdict "is a 'verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions.'" *Mason v. Ford Motor Co.*, 307 F.3d 1271, 1274 (11th Cir. 2002) (quoting Black's Law Dictionary 1555 (7th ed. 1999)). "[I]t is a verdict by which 'the jury pronounce[s] generally on all or any of the issues, either in favor of the plaintiff or in favor of the defendant.'" *Mason*, 307 F.3d at 1274 (second alteration in original) (quoting 89 C.J.S. Trial § 819 (2001)). Thus, an interrogatory containing multiple questions of fact cannot be characterized as a general verdict, and Wilbur cannot challenge the district court's grant of judgment as a matter of law on this basis. *See, e.g., Midwestern Wholesale Drug, Inc. v. Gas*

17

*Serv. Co.*, 442 F.2d 663, 666 (10th Cir. 1971) (holding that district court did not abuse its discretion by submitting compound interrogatories to the jury when they were not confusing and were not inconsistent with its jury instructions).

Finally, Wilbur claims that the district court erred in finding inconsistency in the special verdict form because the jury's answers to Questions 7 and 9 "did not exhaust all of the theories of liability on which the jury was charged." Specifically, Wilbur contends that the jury instructions left open the possibility that the jury could have found that, prior to her termination, CSC's harassment of her had become so severe as to alter the terms and conditions of her employment; thus, such harassment was sufficient to ground these claims even if no "tangible employment action" was taken.[5]

_____

[5]Wilbur also asserts that the jury could have found evidence of tangible employment actions prior to her termination from which it could have grounded CSC's liability, noting specifically (1) Newkirk's attempt to discharge her and subsequent threats to discharge her in February 2001; (2) a proposed demotion later in February 2001; (3) Newkirk's "usurpation of [her] supervisory privileges"; (4) the "extreme level of hostility" directed towards her on and after the date of the attempted discharge; and (5) Wilbur's resulting physical and emotional distress. In its summary judgment order, however, the district court unambiguously concluded that "[w]hile the Plaintiff's termination constitutes a 'tangible employment action,' the Plaintiff has not alleged any other acts that may be properly considered 'tangible employment actions.'" [R1 – 37 – 10]. Wilbur has inexplicably failed to appeal from the court's summary judgment order, and her appeal cannot even be fairly construed as implicitly alleging error from it because Wilbur claims in her Reply that the district court "obviously retreated from its summary judgment determination" in its jury instructions and its failure to enter judgment as a matter of law prior to trial. Thus, this court will not consider the merits of Wilbur's arguments in this regard.

Citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998), Wilbur next contends that the jury could have considered the collective impact of CSC's pre-termination conduct.

In order to entertain this theory, we would first have to accept Wilbur's implicit argument that the district court submitted an incomplete verdict form to the jury in that it addressed some, but not all, of the potential grounds for liability on Wilbur's quid pro quo and retaliation claims. If the court had done so, the effect of its verdict form would have been to directly contravene the fundamental purpose of special interrogatories, which is, generally, "to avoid confusion, appellate uncertainty and the need for additional proceedings by identifying the bases on which the jury rendered its verdict." *Steward & Stevenson Servs., Inc. v. Pickard*, 749 F.2d 635, 644 (11th Cir. 1984). It is far more likely that the district court intended its interrogatories to exhaust all possible bases for which Wilbur could be entitled to recover.

Moreover, the district court's summary judgment order strongly suggests that the court considered CSC's pre-termination conduct relevant only to Wilbur's hostile work environment claim. In its order, the district court cited *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305 (11th Cir. 2001), for the proposition that courts should categorize sexual harassment cases according to whether or not the

But, in making this argument, Wilbur is necessarily alleging that Title VII liability existed in the absence of "tangible employment action," and she cannot escape this court's requirement that she demonstrate "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Wilbur's "collective impact" claim is thus subsumed by her hostile work environment claim, a claim that survived summary judgment but was flatly rejected by the jury.

alleged harassment culminated in a "tangible employment action." *Id.* at 1311. In *Frederick*, we further noted that "the terms 'quid pro quo' and 'hostile environment' are still helpful for distinguishing between cases in which a supervisor carries out his threat to sanction an employee if she does not submit to his sexual demands ('quid pro quo') and circumstances in which the supervisor does not carry through on his threats ('hostile environment')." *Id.* at 1311 n.1.

Regardless, the district court's summary judgment order precluded the jury from considering any of CSC's pre-termination actions as constituting "tangible employment actions," and, therefore, the jury could not have grounded liability in any of this conduct without finding that it seriously and materially altered the terms and conditions of her employment. *See* discussion *infra* note 6. In considering, and rejecting, Wilbur's hostile work environment claim, the jury had the benefit of the district court's instruction that "[o]nly extreme conduct amounting to a material change in the terms and conditions of employment is actionable." [R3 – 67 – 8]. The jury, thus, could not have simultaneously concluded that the terms and conditions of her employment had been altered in resolving Questions 7, 9, and 10. Accordingly, Wilbur has failed to establish that the jury's answers to the special interrogatories can be reconciled with its damages award.

B.       *The district court did not abuse its discretion by entering judgment as a matter of law in favor of CSC on the liability issues presented to the jury*

Pursuant to Rule 49(b), the district court, in its discretion, may direct the jury to answer specific written interrogatories and to return a general verdict. *See* discussion *supra* § III. The rule further provides that "[w]hen the answers [to these special interrogatories] are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict." Fed. R. Civ. P. 49(b). Alternatively, Rule 49(b) permits the district court to either return the jury for further consideration of its answers and verdict or to order a new trial. In exercising its discretion in deciding among these alternatives, the district court must consider the circumstances under which the inconsistency has arisen. *Phillips Chem. Co.*, 301 F.2d at 751.

In its order granting judgment as a matter of law, the district court concluded that its own preparation of the verdict form likely contributed to the jury's award of damages despite its finding of no liability:

> The Court must acknowledge that the verdict form was inartfully prepared in a way that contributed to the jury's ultimate award despite the lack of liability. It would have been preferable, for example, to have informed the jury on the face of the verdict that a negative response to

21

> Questions 7 and 9 would foreclose an affirmative
> response to Question 10.

[R3 – 79 – 5 n.1]. We agree. Furthermore, our analysis of the cause of the inconsistency suggests that additional instructions and further deliberation may have been the preferred method of resolving it. The inconsistency is readily apparent on the face of the verdict form, and the district court recognized that a problem may have existed with the verdict prior to discharging the jury. *See* discussion *supra* note 5. Thus, given the nature of the inconsistency, the district court could have easily prepared supplementary instructions.[6] *Cf. Burger King*, 710 F.2d at 1489 n.5 (commenting on the benefits of resubmitting a case to the jury where doing so would have remedied an inconsistent or ambiguous special verdict).

---

[6]Along these lines, Wilbur also argues that the district court should have granted a new trial because its jury instructions "contained statements of law that were incorrect because the jury was permitted to find the existence of two unlawful motives." We review alleged errors in jury instructions only for plain error where the aggrieved party failed to raise an objection prior to jury deliberations. *Farley*, 197 F.3d at 1329. In order to satisfy this "extremely stringent form of review," the party must establish that (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) not correcting the error would seriously affect the fairness of the judicial proceeding. *Id.* Wilbur's challenge to the district court's jury instructions falls well short of this standard. There is no error because this "multiple motive" challenge to the jury instructions has no more merit than her "concurrent reason" challenge to the court's order granting CSC judgment as a matter of law–the instructions were sufficiently clear to permit the jury to answer "yes" to either Question 7 or Question 9, or to both. Regardless, Wilbur has made no showing that denying her relief on this alleged error would seriously affect the fairness of the judicial proceeding.

22

As such, armed with the benefit of hindsight, we believe that a better alternative may have existed. However, Rule 49(b) does not require the district court to subjectively select the best of the three alternatives, and thus we should not play "Monday morning quarterback" and second guess the district court's judgment here absent abuse of discretion.[7] *See Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 669 (11th Cir. 1993) (declining to hold that a district court abused its "broad discretion" in excluding testimony of an expert witness). The district court reasonably concluded that substantial evidence supported the jury's answers to each of the special interrogatories, that the general verdict was the only source of inconsistency, and that the only inconsistency resulted from the jury's failure to recognize that its negative responses to Questions 7 and 9 precluded its

[7]Wilbur argues that the district court should have awarded a new trial because "[t]he law of this circuit favors a new trial," and Wilbur has compiled a collection of quotations from various cases that appear to support her contention here. However, all but one of the cases Wilbur relies on are inapposite in that they do not arise in the Rule 49(b) context, *see, e.g.*, *Edwards v. Board of Regents of Univ. of Ga.*, 2 F.3d 382, 384 ("Because the second sentence of the jury's verdict in this case is not a written interrogatory, Fed. R. Civ. P. 49(b) does not apply."); *Burger King*, 710 F.2d at 1486-88 (discussing district court's authority to grant a partial new trial under Rule 59(a)); *Griffin*, 471 F.2d at 915 (discussing district court's authority to grant a new trial in the event of inconsistent special interrogatories under Rule 49(a)); and *E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244 (11th Cir. 1997), the final case cited by Wilbur, is distinguishable as well because the alleged inconsistency in that case was created by a district court's post-verdict instruction. *Id.* at 1251. Moreover, the recited language from *Massey Yardley Chrysler Plymouth* is dicta because we concluded that the appellant had not timely raised a Rule 49(b) challenge and thus waived the right to raise this issue on appeal. *Id.* Accordingly, *Phillips Chemical Company*, which tracks the current language of Rule 49(b) in all material respects, provides the relevant framework for consideration of this question. *Id.* at 751.

award of damages.  Accordingly, we conclude that the district court clearly acted within its discretion in entering judgment as a matter of law.

C.    *The district court did not err in granting judgment as a matter of law in favor of CSC as to Wilbur's claim for punitive damages, and, in any event, the issue is moot*

In order to recover punitive damages, a Title VII plaintiff must establish that the defendant engaged in a discriminatory practice "with malice or with reckless indifference" to the plaintiff's federally protected rights.  42 U.S.C. § 1981a(b)(1). However, the jury in this case specifically found, in its answer to Question 4, that CSC had "exercised reasonable care to prevent and correct promptly any sexually harassing behavior in the work place."  This answer, standing alone, should be sufficient to moot any challenge to the district court's pre-verdict dismissal of Wilbur's punitive damages claim because it appears to preclude a finding of negligence, let alone malice or reckless indifference, with respect to Wilbur's federally protected rights.  *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) ("Malice or reckless indifference is established by a showing that the employer discriminated in the face of knowledge that its actions would violate federal law.").  Furthermore, even assuming Question 4 was irrelevant to the jury's analysis of Wilbur's quid pro quo harassment and retaliation claims, the jury's failure to find any legal basis for imposing civil

24

liability on CSC necessarily precludes any award of punitive damages. *See Atlas*

*Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 600 (4th Cir.

1996) (commenting that a finding of liability and compensatory damage is a

prerequisite to finding punitive damages). As such, Wilbur's challenge to the

district court's punitive damages ruling is moot.

Regardless, even if Wilbur's punitive damages claim is not moot, it was

properly rejected. Assuming Wilbur established that Gallon or Newkirk acted

with malice or reckless indifference with respect to her rights, she failed to

establish a sufficient basis for imputing their conduct to CSC. *See Kolstad v. Am.*

*Dental Ass'n*, 527 U.S. 526, 539, 119 S. Ct. 2118, 2127 (1999) ("The inquiry does

not end with a showing of the requisite 'malice or . . . reckless indifference' on the

part of certain individuals, however . . . . The plaintiff must impute liability for

punitive damages to respondent."). And, in this Circuit, "punitive damages will

ordinarily not be assessed against employers with only constructive knowledge of

harassment." *Miller*, 277 F.3d at 1280 (internal quotation marks and citation

omitted). In order to ground liability in an employer, the plaintiff must establish

that "the discriminating employee was high[] up the corporate hierarchy" or that

"higher management countenanced or approved his behavior." *Id.* (alteration in

original). Even if, as Wilbur asserts, CSC's corporate office had notice of the

25

alleged sex discrimination as of February 2002, when she complained to CSC's human resources department, Wilbur has offered nothing to establish that CSC's higher management "countenanced or approved" the offending behavior of Wilbur's supervisors. Moreover, to hold otherwise seems irreconcilable with the jury's finding that CSC had "exercised reasonable care to prevent and correct promptly any sexually harassing behavior in the work place." [R3 – 68 – 2]. Therefore, even if the issue is not moot, we conclude that the district court did not err in dismissing Wilbur's punitive damages claim.

## V.  CONCLUSION

Based on our foregoing discussion, we conclude that the district court did not err in finding that the jury returned a general verdict that was inconsistent with its answers to special interrogatories.

We also conclude that the district court did not abuse its discretion by entering judgment as a matter of law in favor of CSC on the liability issues presented to the jury.

Finally, we conclude that the district court did not err in granting judgment as a matter of law in favor of CSC as to Wilbur's claim for punitive damages, and, in any event, the issue is moot.

**AFFIRMED.**