[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13625
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 07-01115-CV-J-25-MCR

LORENZO JILES,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 7, 2010)

Before BARKETT, HULL, and WILSON, Circuit Judges.

PER CURIAM:

Lorenzo Jiles, an African-American male, appeals the district court's grant

of summary judgment in favor of his former employer, United Postal Service, Inc. ("UPS"), in his race discrimination and retaliation case filed pursuant to the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.10(1)(a) and (7).[1]  On appeal, Jiles argues that the district court erred by determining that he failed to establish a prima facie case of race discrimination due to his failure to identify a similarly situated employee outside his protected class that was treated more favorably.  Jiles also argues that the district court erred by determining that he failed to establish a prima facie case of retaliation because he did not show that his protected activity and the adverse action he suffered were causally connected.  Upon review of the parties' briefs and the record, we affirm the district court's grant of summary judgment in favor of UPS.

## I.  STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same legal standards as the district court, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1] UPS timely removed this case to a federal district court which found it had jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceed the sum or value of 75,000, exclusive of interest and costs, and is between citizens of different States").

with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quoting Fed.R.Civ.P. 56(c)). There must be enough evidence to show that the jury could reasonably find for that party. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## II. DISCUSSION

### A. Jiles's Discrimination Claim

"The Florida courts have held that decisions construing Title VII are applicable when considering claims of discrimination under the Florida Civil Rights Act," because the FCRA was patterned after Title VII. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So. 2d 1005, 1009 (Fla. 1989)); Fla. Stat. § 760.10(a).[2]  Therefore, we analyze cases under the FCRA in the same manner as

---

[2]  Fla. Stat. § 760.10(a) states that

> it is an unlawful employment practice for an employer [t]o discharge or fail to refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

those brought under Title VII. *See Harper*, 139 F.3d at 1387.[3]

Because Jiles relied on circumstantial evidence, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 1093 (1981), applies to his race discrimination claim. Under that framework, if a plaintiff succeeds in carrying the initial burden of establishing a prima facie case of discrimination, the employer must then rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the challenged employment action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997); *see Burdine*, 450 U.S. at 253–54, 101 S. Ct. at 1093–94. If the employer meets these requirements, "the presumption of discrimination created by the *McDonnell Douglas* framework 'drops from the case' and the 'factual inquiry proceeds to a new level of specificity.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 25, n. 10, 101 S. Ct. at 1094). The plaintiff "'may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence*.'" *Id.* (quoting *Burdine*,

---

[3] Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

450 U.S. at 256, 101 S. Ct. at 1095.

The district court granted UPS's motion for summary judgment because it determined that Jiles failed to establish a prima facie case. To prevail on a claim for racial discrimination based on circumstantial evidence, a plaintiff must offer evidence that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) . . . [he] was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824); *see also Knight v. Baptist Hosp. of Miami*, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).

For purposes of the motion for summary judgment, the parties did not dispute that Jiles is a member of a protected class, that he was terminated constituting an adverse employment action, or that he was qualified for his job. UPS argues, and the district court concluded, that Jiles cannot establish a prima facie case on the fourth prong of the test. We therefore limit our review to consider whether the district court committed error in finding that Jiles failed to proffer evidence that he was treated differently than a similarly situated employee.

In cases where a plaintiff alleges discriminatory discipline, we determine if employees are similarly situated by evaluating "whether the employees are

involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation and citation omitted). Additionally, the determination of whether employees are similarly situated may involve consideration of the employees' records with respect to their histories of problems with coworkers or supervisors, job performance, tardiness, absenteeism, and responsiveness to performance evaluations. *Knight*, 330 F.3d at 1316–19.

Following an on-the-job hip injury in 1994, Jiles was no longer able to work as a Package Car Driver. Consequently, UPS agreed to an accommodation for Jiles under the American with Disabilities Act ("ADA"). On appeal, Jiles challenges the lower court's grant of summary judgment in favor of UPS. He argued that because Tom Going, a Caucasian UPS employee, is a similarly-situated employee who was treated more favorably, there was sufficient evidence to establish an inference of discrimination. Specifically, Jiles argues that he was treated differently than Going. Going received an almost identical ADA agreement as Jiles, but Going was permitted to work a more desirable schedule in a DMP[4] position, whereas Jiles was forced to work within the confines of his ADA agreement. In response, UPS argues that Jiles was terminated based on dishonesty

---

[4] The parties do not define the acronym "DMP."

and unilaterally deciding not to work his scheduled hours in violation of company policy.

A review of the record shows that the district court correctly concluded that Jiles failed to establish prong four because Going and Jiles were not similarly situated. In making this claim, the burden is on Jiles "to show a similarity between [his] conduct and that of white employees who were treated differently and not on [the defendant] to disprove their similarity." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1984) (quotation and citation omitted). Additionally, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler*, 447 F.3d at 1323 (quotation and citation omitted). Although Jiles claims that he and Going have similar ADA agreements, Jiles failed to establish a similarity between them by arguing that Going was accused of dishonesty, nor does he claim that Going was disciplined in a manner that was different from him. Furthermore, the record reveals that Jiles was offered the same DMP position as Going, however, Jiles turned down the DMP position. Although it was outside the confines of his ADA Agreement, the fact that the same DMP position was offered to Going belies an inference of race discrimination. Accordingly, Jiles has failed to meet his burden to establish that

Going is "similarly situated in all relevant respects" and that Going was "accused of the same or similar conduct" and "disciplined in different ways." *Knight*, 330 F.3d at 1316 (quotation omitted).

Therefore, because Jiles failed to establish a prima facie case for race discrimination by proffering evidence that UPS treated a similarly situated employee outside of his race more favorably, the district court properly granted summary judgment.

## B. Jiles's Retaliation Claim

In order to establish a prima facie case for retaliation, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted).[5]

To establish the requisite causal connection under the FCRA, "the plaintiff must prove 'that the protected activity and the adverse action are not completely unrelated.'" *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008) (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457

---

[5] As noted above, the FCRA parallels Title VII, and retaliation claims brought under that statute are analyzed under the same framework as those brought under Title VII. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004).

(11th Cir.1998)).  The plaintiff may satisfy the burden of causation by showing close temporal proximity between his protected activity and the adverse employment action.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  In the absence of other evidence tending to show causation, temporal proximity must be "very close."  *Id.* (citation omitted).  A three-to-four-month period between the protected activity and the adverse employment action is "not enough" to show "very close" temporal proximity.  *Id.*; *see Higdon v. Jackson*, 393 F.3d 1211, 1220–21 (11th Cir. 2004) (holding that a three month interval between protected activity and adverse act is too long, standing alone to establish an inference of retaliation).  The plaintiff must also provide evidence of the employer's "knowledge of the protected expression."  *Higdon*, 393 F.3d at 1220–21.

Additionally, close temporal proximity is not the only means by which a plaintiff can establish a causal connection.  A plaintiff may establish a causal relation element under a prima facie case of retaliation based on evidence that an employer knew of a protected activity, and a series of adverse employment actions commenced almost immediately thereafter.  *Wideman*, 141 F.3d at 1457.  Nevertheless, even intervening retaliatory acts must be material (or substantial) to be considered.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

9

67–68, 126 S. Ct. 2405, 2414–15 (2006) (("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . We speak of *material* adversity because we believe it is important to separate significant from trivial harms.") (emphasis in original)). To constitute a materially adverse action, the employer's action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable worker from making or supporting a discrimination charge. *Id.* at 68, 126 S. Ct. at 2415. Although we will look to the "totality of the alleged reprisals," we will "consider only those that are truly adverse." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (quotations omitted). We focus on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69–70, 126 S. Ct. at 2416.

If a plaintiff establishes a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citation omitted). If the employer accomplishes this, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *Id.*

10

Jiles argues that the district court erred in granting summary judgment because UPS retaliated against him for filing a race discrimination grievance in May 2006 by placing him on leave in December 2006 and terminating him shortly thereafter in January 2007. Jiles contends that the district court erred by ignoring the "series of events" that occurred between May 2006 and January 2007, and that those events establish the requisite causal connection. The anti-retaliation provision of the FCRA prohibits an employer from discriminating against a person for opposing an unlawful employment practice or for making a charge of discrimination. Fla. Stat. § 760.10(7).[6]

The district court correctly found that Jiles had not put forth any evidence to show a causal connection between the protected activity of his administrative charge of race discrimination in May 2006 and his January 2007 termination. Further, the district court did not err when it reasoned that the time-frame of eight months does not sufficiently proximate to establish a causal connection. Doc. 72 at 12; *see Thomas*, 506 F.3d at 1364 (holding that a three to four month period

---

[6] Fla. Stat. § 760.10(7) states that

> it is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

between the protected activity is not enough to show "very close" temporal proximity). We therefore find no error in the district court's conclusion. Accordingly, because the time-frame of eight months is not close enough to establish the causation requirement, the district court properly granted summary judgment to UPS.

In the alternative, Jiles also attempts to meet the causation requirement by arguing that UPS engaged in a series of material or adverse employment actions against him. Although Jiles argues that the district court ignored this particular argument to prove causation, a review of the record shows that Jiles did not proffer evidence that UPS's decision to discharge him for gross insubordination and job abandonment constituted a pretext for prohibited, retaliatory conduct for the district court's review.[7] Accordingly, Jiles's argument does not change the outcome of the district court's holding, and we affirm.

Upon review of the record and consideration of the parties' briefs, we conclude that the district court properly granted summary judgment because Jiles failed to show that an adverse employment action he suffered was causally connected to his statutorily protected activity. We affirm the district court's grant of summary judgment.

---

[7] In a conclusory statement, Jiles merely asserts that "the stated reasons for his termination were nothing more than an attempt at covering up the true reasons." Doc. 29 at 20.

**AFFIRMED.**