[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12257
Non-Argument Calendar
_____

D.C. Docket No. 6:19-cv-00385-PGB-GJK

CLYDE DANDRIDGE,

Plaintiff-Appellant,

versus

WAL-MART STORES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 10, 2021)

Before WILLIAM PRYOR, Chief Judge, JORDAN and GRANT, Circuit Judges.

PER CURIAM:

Clyde Dandridge appeals the summary judgment entered in favor of Walmart, Inc., and against his complaint of discrimination and retaliation under the Florida Civil Rights Act. Walmart removed this action to the district court based on diversity of citizenship. 28 U.S.C. §§ 1332, 1441, 1446. We affirm.

"We review a summary judgment ruling *de novo*, viewing the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation omitted). Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

Dandridge argues that the district court erred when it granted summary judgment against his claim of racial discrimination based on the failure to promote him to several positions because he met the objective qualifications for the promotions and the district court erroneously relied on Walmart's subjective evaluations to determine that he was unqualified for them. He also argues that he proved that Walmart's proffered reasons for failing to promote him were pretextual

because the promoted individuals were equally or less qualified than himself and because Walmart systematically stifled the promotion of black employees while advancing white employees.

Claims of discrimination under the Florida Act are reviewed using the same analytical framework as used for claims under Title VII of the Civil Rights Act of 1964. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Both Title VII and the Florida Act prohibit employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760(2). We do not consider "whether employment decisions are prudent or fair" but instead determine "whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

The district court committed no error in granting summary judgment against Dandridge's claim of racial discrimination for any failure to promote him. Dandridge presented no evidence that he was qualified for the positions or that the individuals hired for those positions had lesser or equal qualifications. The job description for the three store manager positions for which Dandridge applied stated that an applicant must be proficient in the competency area of "Leads Inventory Flow Process." That is, the individual must manage the flow process "to ensure merchandise is replenished and in-stock" as well as monitor and evaluate

3

the facility "to identify problems with inventory flow and signs of shrinkage, and take[] appropriate corrective action." Dandridge received a score of "Development Needed" in the category of "Leads Inventory Flow Process" in his performance evaluations in 2011, 2013, 2015, and 2016. And he had been coached for zoning issues and shrinkage. Moreover, the individuals selected for the positions had superior qualifications. For four of the six positions—manager of store #4142 and the three fresh operations manager positions—the selected individuals all had previous experience as a store manager of either Walmart or another "big-box retailer," and Dandridge admitted he lacked that experience. For the manager position at store #3629, the selected individual, unlike Dandridge, was recommended by other market managers and had no coaching issues. For the manager position at store #649, the selected individual had three more years of experience as a comanager than Dandridge.

Dandridge also failed to present any evidence that Walmart's proffered reasons for its hiring decisions were false and a pretext for discrimination. That is, Dandridge failed to prove that Walmart's proffered reasons were so implausible, inconsistent, and contradictory that a reasonable factfinder could find them unworthy of credence, and he failed to present evidence that the true motivation for any lack of promotion was racial discrimination. Dandridge argues that he is more qualified than the individuals selected because he has a bachelor's degree, but he

4

presented no evidence that the successful applicants lacked college degrees. And the job descriptions for the manager positions did not mention a college degree as a minimum or preferred qualification. Dandridge also provided no evidence to support his self-serving assertion that Walmart stifled the promotion of black employees.

Dandridge argues that the district court erred in granting summary judgment against his claims of retaliation. He contends that he presented sufficient evidence of a casual nexus between his protected activities and the alleged retaliatory actions. And he argues that Walmart's proffered reasons for its actions were a pretext for retaliation. The Florida Act prohibits an employer from retaliating against an employee for opposing any practice made unlawful by the Act. *See* Fla. Stat. § 760.10(7). That prohibition too is patterned after the prohibition in Title VII, and claims of retaliation are reviewed using the same framework. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004).

The district court again did not err. For Count Two, Dandridge failed to establish a prima facie case of retaliation because he did not prove a causal connection between the protected activity and the adverse action. An almost three-year gap separated Dandridge's complaint of January 2013 and the refusal to promote him in September 2015. And he presented no evidence that Walmart's proffered reasons for not promoting him in September 2015 were a pretext for

discrimination. For Count Three, Dandridge failed to establish a prima facie case of retaliation because he failed to prove that he had engaged in protected activity. Dandridge alleged that he was issued a written coaching on July 28, 2015, because he sent an email on July 1, 2015, about not being promoted, but his email failed to mention any alleged discrimination, racial or otherwise. Dandridge also presented no evidence that the individual who issued the written coaching was aware of his email or of any protected activity. Dandridge's claim under Count Four fails because he presented no evidence that Walmart's proffered reason for issuing a written coaching on August 23, 2016, was false. Dandridge received the written coaching for failing to zone the store properly, for leaving consumable areas not completely worked, and for failing to ensure that carts were stored away. For Count Five, even if we were to assume that his transfer to another store following the incident on November 1, 2016, qualified as an adverse employment action, Dandridge's claim would fail as a matter of law. Dandridge presented no evidence that the decisionmaker knew of Dandridge's earlier EEOC charge. So Dandridge failed to establish a causal connection between the protected activity and the alleged adverse action.

**AFFIRMED.**

6