[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13506

_____

D.C. Docket No. 9:12-cv-80406-KLR

CARLOS MONTERO,
as Personal Representative of the
Estate of Richard Montero, deceased,

Plaintiff - Appellee,

versus

RAMESH NANDLAL,
in his individual capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 31, 2014)

Before TJOFLAT, JULIE CARNES, and GILMAN,[*] Circuit Judges.

PER CURIAM:

Deputy Ramesh Nandlal of the Palm Beach County Sheriff's Office appeals the district court's denial of his motion for summary judgment on the basis of qualified immunity. Nandlal shot and killed Richard Montero (hereinafter "Montero") during a confrontation that occurred on April 9, 2010. Thereafter, Montero's brother, plaintiff Carlos Montero ("Plaintiff"), sued Nandlal in the latter's individual capacity under 42 U.S.C. § 1983, alleging that Nandlal used excessive force in violation of the Fourth Amendment. Viewing the evidence in the light most favorable to Plaintiff, as we are required to do, we conclude that no reasonable officer would have used deadly force against Montero under the circumstances and that clearly established law gave Nandlal fair notice that his actions violated the Fourth Amendment. We therefore **AFFIRM** the district court's denial of summary judgment.

## I. BACKGROUND

On April 9, 2010, Nandlal and fellow Deputy Victor Blackman responded to an abandoned-vehicle call. Upon their arrival at the scene, the deputies found Montero asleep behind the wheel of his SUV, which was in the middle of the road

---

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

with the engine running. Montero smelled of alcohol, but the deputies did not cite him for DUI or administer a sobriety test.   Instead, after persuading Montero to exit the SUV, the deputies contacted his friend, Nancy Schiff, to come and get him.   Schiff arrived at the scene shortly thereafter, and the deputies directed Montero to get into her car.

At some point while he was sitting in Schiff's car, Montero learned that his SUV was going to be towed.   He then swung his legs out of the car and began arguing with the deputies.   After Montero ignored several orders to get back into the car, Blackman decided to arrest him for disorderly intoxication.   Montero either voluntarily exited or was pulled from Schiff's car, and Blackman secured the bracelet of a handcuff to one of his wrists.   A scuffle ensued when Montero pulled away from Blackman in an effort to avoid having his other wrist handcuffed.

The struggle continued for several minutes, during which time the deputies used their tasers on Montero to no effect.   Eventually, the two deputies were able to bring Montero to the ground.   The three men ultimately reached a position where Montero was on his back, in a position between lying and sitting down, with Deputy Blackman standing over him and Deputy Nandlal seated and facing him.   While the three were in this position, Blackman heard Nandlal say, "I'm

3

going to shoot."   Blackman quickly moved out of the way, to the side of Montero. Without giving any other warnings, Nandlal immediately fired four shots at Montero, who later died from the gunshot wounds.

It is undisputed that Montero was unarmed during the confrontation, and that the deputies had no reason to believe that he had any kind of weapon. Although Montero had a loose handcuff attached to one of his arms, he never tried to use the cuff as a weapon.   Deputy Blackman testified that Montero did not reach for the deputy's gun during the struggle, and that he likewise did not see Montero reach for Deputy Nandlal's gun.   Nancy Schiff, who had a clear view, confirmed that Montero did not reach for, or ever have access to, either deputy's gun.   Deputy Blackman further testified that he had leverage and was standing over Montero when Nandlal announced that he was going to shoot.   Schiff stated that Montero was immobilized and lying spread eagle, with his arms and legs pinned down, just prior to being shot.

Plaintiff sued Nandlal on behalf of Montero's estate, alleging that the shooting violated Montero's Fourth Amendment rights.   Nandlal moved for summary judgment on the ground of qualified immunity.   The district court denied the motion, finding that questions of fact concerning the shooting precluded summary judgment.   Nandlal now appeals.

4

## I. DISCUSSION

### A.    Jurisdiction

As a preliminary matter, Plaintiff argues that this Court lacks jurisdiction to consider Nandlal's appeal.   To the contrary, we have interlocutory jurisdiction to review a denial of qualified immunity to the extent that the denial raises an issue of law.   *Plumhoff v. Rickard,* ___U.S. ___, 134 S. Ct. 2012, 2019 (2014).   Our jurisdiction encompasses situations where the district court "simply rules that material issues of fact precluded summary judgment" on the ground of qualified immunity, as occurred here.   *Hadley v. Gutierrez,* 526 F.3d 1324, 1328 (11th Cir. 2008) (internal quotation marks omitted).   Because this appeal raises the legal issue of whether Nandlal's alleged conduct violated a clearly established federal right, we have interlocutory jurisdiction over it.   *See Plumhoff,* ___ U.S. at ___, 134 S. Ct. at 2019; *see also Cottrell v. Caldwell,* 85 F.3d 1480, 1485 (11th Cir. 1996) (noting the Court's interlocutory jurisdiction "in qualified immunity cases where the denial is based even in part on a disputed issue of law").

### B.    Standard of Review

We review *de novo* a district court's disposition of a summary judgment motion that is based on qualified immunity and apply the same legal standards as the district court.   *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).   In

conducting our review, we resolve any factual disputes in favor of the plaintiff and then decide whether the defendant is entitled to qualified immunity under that version of the facts.   *Id.*; *see also Tolan v. Cotton,* ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant . . . ."). We acknowledge that the "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002), and *Priester v. City of Riviera Beach,* 208 F.3d 919, 925, n.3 (11th Cir. 2000)). Nevertheless, we view the facts from the plaintiff's perspective because the determinative issue on appeal is "not which facts the parties might be able to prove," but whether "certain given facts" demonstrate a violation of clearly established law.   *Crenshaw v. Lister,* 556 F.3d 1283, 1289 (11th Cir. 2009).

**C.    Analysis**

Qualified immunity completely "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508

6

(2002)).   To obtain qualified immunity, a public official must first show that he was engaged in a discretionary duty when the allegedly wrongful act occurred. *Id.* at 995.   Plaintiff does not dispute that Deputy Nandlal was acting within the scope of his discretionary authority when he shot Montero.   The burden thus shifts to Plaintiff to show that qualified immunity is not appropriate.   *Id.*

Plaintiff must satisfy a two-part test to meet his burden.   *McCullough,* 559 F.3d at 1205.   First, he must show that Nandlal's conduct violated a constitutional right.   *Id.*   Assuming a violation occurred, Plaintiff must also show that the right was clearly established at the time of the incident.   *Id.*   Viewing the facts in the light most favorable to Plaintiff, we conclude that both prongs are satisfied here.

1.     Constitutional Violation

Plaintiff's deadly-force claim is analyzed under the objective reasonableness standard of the Fourth Amendment.   *Plumhoff,* ___ U.S. at ___, 134 S. Ct. at 2020 (citing *Graham v. Connor,* 490 U.S. 386, 109 S. Ct. 1865 (1989), and *Tennessee v. Garner,* 471 U.S. 1, 105 S. Ct. 1694 (1985)).   The reasonableness standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."   *Id.* (internal citations omitted).   Reasonableness in this context depends on all the circumstances relevant to an

7

officer's decision to use force and the amount of force used.    *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010).   We view the circumstances "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"   *Plumhoff,* ___ U.S. at ___, 134 S. Ct. at 2020 (quoting *Graham,* 490 U.S. at 396, 109 S. Ct. 1865).   And we allow for the fact that officers are often required to make "split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."   *Id.* (internal quotation marks omitted).

We have identified several circumstances that are relevant to the reasonableness of an officer's decision to use deadly force on a criminal suspect, including "the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force." *Jean-Baptiste,* 627 F.3d at 821.   We also have observed that an officer may constitutionally use deadly force when he:

> (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*McCullough,* 559 F.3d at 1206 (quoting *Vaughan v. Cox,* 343 F.3d 1323, 1329-30 (11th Cir. 2003)).

Accepting Plaintiff's account of the events leading up to the shooting, we have little difficulty concluding that Nandlal violated Montero's Fourth Amendment right to be free from the use of excessive force.   Montero was asleep at the wheel of his SUV when the deputies first encountered him.   Although they suspected that Montero had been drinking, the deputies did not consider the situation serious enough to administer a field sobriety test and did not intend to arrest Montero for any crime.   When Montero later became agitated because the deputies indicated their intention to tow his SUV, Blackman decided to arrest him for misdemeanor disorderly intoxication.   There is no indication that Montero's purported crime was serious or that he posed a risk to anyone.

Montero did initially resist being arrested, and he arguably posed some threat to Nandlal and Blackman once the struggle began.   However, Nandlal had no reason to believe that Montero was armed, and we must assume, taking the facts in the light most favorable to Plaintiff, that he was not reaching for either deputy's gun at any time during the confrontation.   Crucially, there is evidence to support Plaintiff's assertion that, at the time Nandlal decided to shoot Montero, the latter was on his back, subdued and immobilized, with Deputy Blackman standing

9

over him.   Montero's resistance had therefore ended, and any physical threat he presented had been neutralized when the shooting occurred.   *Cf. Plumhoff*, ___ U.S. at ___, 134 S. Ct. at 2021 (the threat created by a suspect's high-speed chase did not end when the car temporarily came to a stop because "less than three seconds later [the suspect] resumed maneuvering his car").   Thus, seemingly having ended at the time of the shooting, Montero's earlier resistance does not, taken by itself, legitimize Deputy Nandlal's later decision to shoot him.   *See Jean-Baptiste,* 627 F.3d at 821 (listing resistance to arrest as *one* of the factors that is relevant to the objective-reasonableness inquiry) (emphasis added); *cf. Garner,* 471 U.S. at 11, 105 S. Ct. 1694 ("It is not better that all felony suspects die than that they escape.").

2.      Clearly Established Law

Nandlal is nonetheless entitled to qualified immunity unless Plaintiff can show that Montero's Fourth Amendment rights were "clearly established" at the time of the shooting.   *Plumhoff,* ___ U.S. at ___, 134 S. Ct. at 2023.   To be clearly established, the contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."   *Id.*   "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendant[] that [his] alleged

10

[conduct] was unconstitutional.'"  *Tolan,* ___ U.S at   ___, 134 S. Ct. at 1866 (quoting *Hope,* 536 U.S. at 741, 122 S. Ct. 2508).

Fair warning is most commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case has arisen.  *Terrell v. Smith,* 668 F.3d 1244, 1255 (11th Cir. 2012).  However, a judicial precedent with identical facts is not essential for the law to be clearly established.  *Youmans v. Gagnon,* 626 F.3d 557, 563 (11th Cir. 2010). Authoritative judicial decisions may "establish broad principles of law" that are clearly applicable to the conduct at issue.  *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1209 (11th Cir. 2007).   And occasionally, it may be obvious from "explicit statutory or constitutional statements" that conduct is unconstitutional.  *Id.* at 1208-09.   In all of these circumstances, qualified immunity will be denied if the preexisting law "make[s] it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."  *Youmans,* 626 F.3d at 563.

We set forth the factors relevant to deciding whether an officer's use of deadly force was reasonable in several cases that pre-date April 9, 2010.  *See Mercado v. City of Orlando,* 407 F.3d 1152, 1157 (11th Cir. 2005) (noting the severity of the crime, the threat posed by the suspect to the safety of the officer or

others, and whether the suspect was resisting or attempting to evade arrest by flight as relevant factors); *Vaughn,* 343 F.3d at 1329-30 (considering whether a warning was given, if feasible).   None of those factors indicate that it would be reasonable to shoot–four times, in rapid succession and without any warning–an unarmed suspect who is subdued, immobilized, and lying on his back with another officer standing over him.

We also observed, in several cases pre-dating April 9, 2010, that an officer may constitutionally use deadly force against a suspect whom the officer reasonably believes (1) "poses a threat of serious physical harm to the officer or others" or (2) has "committed a crime involving the infliction or threatened infliction of serious physical harm."   *Vaughan,* 343 F.3d at 1329-30; *see also Robinson v. Arrugueta,* 415 F.3d 1252, 1255 (11th Cir. 2005); *Mercado,* 407 F.3d at 1157.   Based on the assumed facts, these cases likewise make it obvious that Nandlal violated Montero's Fourth Amendment rights by using deadly force against him.   The only crime that Nandlal suspected Montero of committing was misdemeanor disorderly intoxication, which did not involve or threaten the infliction of physical harm.   Nor was there any basis upon which Nandlal could otherwise reasonably perceive Montero, who was unarmed, immobilized, and lying beneath Deputy Blackman, as posing a threat of serious physical harm.   *Cf.*

12

*Long v. Slaton,* 508 F.3d 576, 583 (11th Cir. 2007) (recognizing the threat posed by a psychotic man who had stolen and was driving away in a police cruiser); *Willingham v. Loughnan,* 321 F.3d 1299, 1303 (11th Cir. 2003) (concluding that a suspect who had just thrown a knife at an officer, and who was close to a source of weapons and not under police control, was reasonably perceived as a sufficient threat to warrant the use of deadly force).

In short, Nandlal had "fair warning" on April 9, 2010 that his conduct violated the Fourth Amendment.   Of course, a jury might well find that Nandlal reasonably perceived Montero to be a serious threat because he was not in fact subdued at the time of the shooting or because at some point during the struggle he had reached for Nandlal's gun belt.   But assuming Plaintiff's version of the facts to be correct, as we must do in reviewing a defendant's motion for summary judgment, existing case law provided sufficient warning to alert Nandlal to the fact that shooting Montero, under these circumstances, would violate the latter's Fourth Amendment rights.   Accordingly, qualified immunity for Deputy Nandlal is not warranted on these facts.

### III. CONCLUSION

For all of the above reasons, we **AFFIRM** the district court's order denying qualified immunity to defendant Nandlal.

13