**Carlos MONTERO, Plaintiff-Appellant,**

v.

**Ramesh NANDLAL, in his individual capacity, Defendant-Appellee.**

**No. 15-14661**

United States Court of Appeals, Eleventh Circuit.

(March 9, 2017)

Andrew A. Harris, Adam J. Richardson, Burlington & Rockenbach, PA, West Palm Bch, FL, Adam M. Balkan, Balkan & Patterson, LLP, Boca Raton, FL, for Plaintiff-Appellant

Summer M. Barranco, Richard A. Giuffreda, Purdy Jolly Giuffreda & Barranco, PA, Fort Lauderdale, FL, for Defendant-Appellee

Before MARCUS, DUBINA, and WALKER,* Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Carlos Montero ("Plaintiff") appeals the district court's order granting judgment as a matter of law to Defendant Ramesh Nandlal ("Nandlal") on Plaintiff's 42 U.S.C. § 1983 excessive force claim. Nandlal, a deputy with the Palm Beach County Sheriff's Department, shot and killed Plaintiff's brother, the decedent Richard Montero ("Montero"), during a confrontation that occurred on April 9, 2010. Plaintiff sued Nandlal in his individual capacity under § 1983, alleging that Nandlal used excessive force in violation of the Fourth Amendment. Following a trial, the jury reached a general verdict finding

that Plaintiff was entitled to damages because of Nandlal's use of excessive force. The jury answered a special interrogatory in favor of Nandlal—finding that he had made an objectively reasonable mistake in shooting Montero. Based on the jury's findings of fact in the special interrogatory, the district court held that Nandlal was entitled to qualified immunity and granted judgment as a matter of law.

After careful review, and having the benefit of oral argument, we conclude that the district court properly granted judgment as a matter of law, and accordingly affirm.

## I. BACKGROUND

### A. Factual Background

This is a tragic case. The evidence presented at trial showed that Nandlal and fellow Palm Beach County Sheriff's Deputy Victor Blackman ("Deputy Blackman") responded to an abandoned vehicle call during the early morning hours of April 9, 2010. [DE 128 at 50]. The deputies found Montero asleep at the wheel of an SUV with the engine running. [Id. at 50-51]. The deputies knocked on the window to wake Montero, and were able to put the SUV in park. [Id. at 52]. The deputies ordered Montero out of the SUV, and observed that he was unsteady and smelled of alcohol. [Id. at 53-54]. Because of Montero's apparent intoxication, the deputies called Montero's ex-girlfriend and current roommate, Nancy Schiff ("Schiff"), to come and retrieve him. [Id.]. Upon Schiff's arrival, Montero initially complied with the deputies' orders to enter Schiff's vehicle. However, Montero began yelling at the deputies and exited the vehicle when he learned

---

* Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

his SUV was going to be towed. [*Id.* at 118, 128-29].

After Montero ignored several orders to get back into Schiff's vehicle, Deputy Blackman made the decision to arrest Montero for disorderly intoxication and began to place him in handcuffs. [*Id.* at 119, 129]. Before Deputy Blackman could secure the second handcuff, Montero became enraged, pushing both deputies and pulling away from them. [*Id.* at 130]. A struggle between Montero and the two deputies ensued.

As witness Schiff described,

[T]here was, you know, cussing and yelling, and they were saying, oh, you know, get down on the ground, and he was saying, No. You're trying to F me, and all this stuff. And there was lots of struggling and fighting. They were grabbing him. They were trying to pull him down. Eventually, they all ended up down on the ground in a pile again, fighting and trying to cuff him.

[*Id.* at 120]. Nandlal testified that Montero threatened him, and attempted to grab his groin and bite his legs; however Schiff did not hear this particular threat or see Montero engage in such behavior. [*Id.* at 132, 166, 173; DE 128 at 64, 67]. The deputies also testified that Montero grabbed for their guns or magazine belts, but Schiff denied ever seeing Montero reach for, or gain access to, either of the deputy's guns. [DE 128 at 68, DE 127 at 122, 145-46, 199-200].

This intense physical fight lasted for several minutes, during which time the deputies repeatedly, and unsuccessfully, tried to control Montero with verbal commands, hand maneuvers, and, finally, tasing. [DE 127 at 120, 170-73; DE 128 at 63-64]. Schiff confirmed that the tasing had no effect on Montero, and that he refused to comply with repeated commands to stop fighting, to get down on the ground, and to

give the deputies his hands. [DE 127 at 132-33]. She testified that the deputies eventually were able to get Montero "subdued" and "pinned" in a "spread-eagle" position, with each deputy holding one of Montero's arms and legs. [*Id.* at 120, 134, 140]. However, she acknowledged that even then, Montero never surrendered, but rather kept squirming and wiggling. [*Id.* at 120-21, 133-34]. The deputies testified that they were never able to gain control over Montero. Indeed, it is undisputed that they were not able to secure the second handcuff to his wrist until after he had been shot. [*Id.* at 143, 149-59, 165, 176-180; DE 128 at 65-67, 81-82].

During the prolonged struggle, Nandlal was knocked to the ground a second time. [DE 128 at 65-66]. At that point, Nandlal announced that he was going to shoot if Montero continued to struggle. [*Id.* at 66, 71; DE 127 at 121, 182]. Schiff recalled hearing Nandlal give this caution "a couple" of times before finally shooting Montero. [DE 127 at 121, 134]. Nandlal fired four shots, which all hit and killed Montero. [*Id.* at 188, 190]. At the time the shots were fired, Nandlal was rising up from lying on his back and Montero was on the ground in a "slightly seated" position. [*Id.* at 148; DE 128 at 70].

Sandra Wissinger ("Wissinger"), a passerby on her way to work, was stopped at a red light and witnessed part of the altercation. [DE 128 at 216]. Wissinger testified that she saw the deputies struggling with Montero and did not believe they had control over him or could restrain him. [*Id.* at 217, 220-21]. While watching the struggle, Wissinger heard Montero say, "I'm going to kill you," and saw his hands near the deputies' guns. [*Id.* at 218-29, 236-40].

It is undisputed that Montero was unarmed during the struggle, and that the deputies had no reason to believe he had

any kind of weapon. [DE 127 at 144-45, 159, 197]. Nevertheless, Nandlal testified that he shot Montero because he believed Montero was going to get his or Blackman's gun and kill both of them-or otherwise physically overpower and seriously injure them-during the continued struggle. [DE 128 at 80-81, 107]. Nandlal further stated that he only had a split second to think about the decision to shoot and no time for deliberation between shots. [DE 127 at 189; DE 128 at 70, 143].

## B. Procedural Background

This is the second time we have considered this case on appeal. In the first appeal, a panel of our court affirmed the district court's denial of summary judgment to the defendant based on qualified immunity. Construing evidence in the summary judgment record in favor of the Plaintiff, we assumed Montero was "subdued and immobilized" when Nandlal shot him "without any warning." We acknowledged that our factual assumptions. might not ultimately be borne out by the evidence presented at trial. *See Montero v. Nandlal,* 597 Fed.Appx. 1021, 1025-27 (11th Cir. 2014).

Subsequently, the district court held a jury trial on Plaintiff's claim. At the close of Plaintiff's evidence, Nandlal moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, asserting two grounds in support of his motion. First, Nandlal argued that there was insufficient evidence to support a finding that he had used excessive force against Montero. Second, Nandlal argued that he was entitled to qualified immunity based on the evidence presented. The court deferred ruling on the motion until after the verdict.

In reaching its verdict, the jury considered both a general verdict form and a special interrogatory. The general verdict form asked:

Do you find from a preponderance of the evidence: (1) That Carlos Montero, as personal representative of the Estate of Richard Montero, deceased, has proved that Ramesh Nandlal intentionally used excessive or unreasonable deadly force upon Richard Montero during his arrest?

[DE 111]. The jury answered this first question in the affirmative. In the block for damages, the jury indicated that Plaintiff was entitled to $540,000 in compensatory damages.

Given that response, the jury then proceeded to the special interrogatory, which asked:

Do you find by a preponderance of the evidence that Deputy Nandlal made an objectively reasonable mistake when he perceived that Richard Montero posed an imminent threat of serious physical harm to the deputies or others at the time that Deputy Nandlal shot Richard Montero with his firearm?

[*Id.* at 3-4]. The jury answered the special interrogatory in the affirmative.

In response, Nandlal renewed his Rule 50 motion for judgment as a matter of law, arguing that insufficient evidence supported a finding of excessive force. He also argued that he was entitled to qualified immunity on the excessive force claim based on the jury's answer to the special interrogatory. Plaintiff argued that the evidence was sufficient to support the jury's finding of excessive force, and that the special interrogatory was improper and should not form the basis of judgment as a matter of law.

The district court granted Nandlal's motion for judgment as a matter of law based on qualified immunity. Summarizing the trial testimony, the court noted that immediately prior to the shooting, Montero had engaged in a prolonged physical struggle

with the deputies during which he had violently resisted arrest, knocked the deputies to the ground, tried to bite Nandlal, and ignored repeated commands to surrender. The district court also pointed out that the deputies had been unable to control Montero with hand maneuvers or by tasing him, and that Nandlal had warned Montero that he was in danger of being shot prior to firing at him. [*Id.*] Based on those facts, and on the jury's finding in the special interrogatory, the court concluded that, "the evidence presented at trial supports the jury's finding that Nandlal used excessive force against Montero but that Nandlal made an objectively reasonable mistake in doing so and is therefore entitled to qualified immunity." [DE 131 at 8].

## II. STANDARD OF REVIEW

We review a district court's entry of judgment as a matter of law *de novo*. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1199 (11th Cir. 2004). "However, when a district court enters judgment as a matter of law on the ground that a jury's answers to special interrogatories are consistent with each other but inconsistent with a general verdict, we review only for an abuse of discretion." *Id.* Moreover, "[w]hile the district court's application of Rule 49(b) is reviewed only for abuse of discretion, its threshold determination that the jury returned a general verdict inconsistent with its answers to special interrogatories is a mixed question of law and fact, and, as such, it is subject to plenary review." *Id.* (internal citation omitted).

We apply a deferential standard of review to special interrogatory verdict forms; "[a]s long as they accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed." *Johnson v. Breeden*, 280 F.3d 1308, 1314 (11th Cir. 2002) (internal quotation omitted).

## III. DISCUSSION

At issue is (1) whether the district court erred in entering judgment as a matter of law in favor of Nandlal, and (2) whether the district court abused its discretion in submitting the special interrogatory to the jury.

With respect to the first issue, Federal Rule of Civil Procedure 49 governs the analysis. Although the district court cited to Federal Rule of Civil Procedure 50 for support, it did not err in entering judgment as a matter of law in favor of Nandlal. Given the inconsistent verdicts, the district court properly entered judgment in favor of Nandlal on the basis of the jury's answer to the special interrogatory. Relatedly, the district court did not abuse its discretion when it determined sufficient evidence supported the jury's special interrogatory finding.

Finally, with respect to the second issue, the district court did not abuse its discretion in submitting the special interrogatory to the jury. The district court did not ask the jury to make a legal finding on the ultimate issue of qualified

immunity. Instead, the special interrogatory asked the jury to make a factual determination about whether Nandlal made an objectively reasonable mistake.

### A. The district court did not err in entering judgment as a matter of law in favor of Nandlal.

█ To begin with, how and when a defendant can allege a qualified immunity defense depends on the stage of litigation. This court explained the process in *Johnson v. Breeden*,

> Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the

summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation. . . . But if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial.

Defendants who are not successful with their qualified immunity defense before trial can re-assert it at the end of the plaintiff's case in a Rule 50(a) motion. That type of motion will sometimes be denied because the same evidence that led to the denial of the summary judgment motion usually will be included in the evidence presented during the plaintiff's case, although sometimes evidence that is considered at the summary judgment stage may turn out not to be admissible at trial. . . .

It is important to recognize, however, that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense. . . .

A tool used to apportion the jury and court functions relating to qualified immunity issues in cases that go to trial is special interrogatories to the jury.

280 F.3d 1308, 1317–18 (11th Cir. 2002) (internal citations and quotations omitted). Thus, "[w]here the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues." *Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996). If the jury finds facts that establish the qualified immunity defense, the defendant is entitled to judgment as a matter of law. *See id.*

Because the central issue is whether the jury's factual findings entitle the defendant to prevail on the defense of qualified immunity-not the sufficiency of the evidence-judgment is more properly viewed as entered pursuant to Rule 49, rather than Rule 50. *See, e.g., Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) ("[I]n deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence.").

Moreover, Rule 49 provides guidance when a jury's special interrogatory answers are inconsistent with the general verdict. The rule states,

> When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may: (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict; (B) direct the jury to further consider its answers and verdict; or (C) order a new trial.

*See* FED. R. CIV. P. 49(b). A verdict is inconsistent "if answers given by the jury may not fairly be said to represent a logical and probable decision on the relevant issues as submitted." *Wilbur*, 393 F.3d at 1200 (internal quotation omitted).

If the district court enters judgment pursuant to Rule 49(b)(1)(A), the decision should ordinarily be affirmed when the jury's findings on the special interrogatories are supported by evidence in the record, and the only inconsistency results from the general verdict. *See Wilbur*, 393 F.3d at 1204 (affirming a district court's entry of judgment as a matter of law when substantial evidence supported the jury's answers to each of the special interrogato-

ries and that the general verdict was the only source of inconsistency).

Here, it is clear that this case involves Rule 49 rather than Rule 50. With respect to the special interrogatory, Nandlal did not challenge the sufficiency of evidence on which the jury based its finding. Instead, he argued that he was entitled to a judgment as a matter of law because of the jury's answer to the special interrogatory. Moreover, it is clear that the jury returned a general verdict that was inconsistent with its answer to the special interrogatory. *See Whittier v. Kobayashi*, 581 F.3d 1304, 1310 (11th Cir. 2009) (finding an officer was entitled to qualified immunity, and thus not liable for damages, when he makes an objectively reasonable mistake); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003) (holding that deadly force is not excessive force where the officer has an objective reasonable fear that the suspect poses an imminent threat of bodily harm).

When the jury returned an answer to the special interrogatory that was inconsistent with the general verdict, the district court was required to exercise one of three options: approve the answer notwithstanding the general verdict, direct the jury for further consideration, or order a new trial. Because the jury's finding that Nandlal made an objectively reasonable mistake was supported by evidence in the record, the district court was well within the scope of its discretion to enter judgment according to the special interrogatory notwithstanding the general verdict.[1] Although the district court did not explicitly reference Rule 49, it is evident that it applied the correct Rule 49 analysis; thus the court did not err in entering judgment as a matter of law in favor of Nandlal.

## B. The district court did not abuse its discretion in submitting the special interrogatory to the jury.

▇ Qualified immunity is a legal question to be decided by the court and cannot be submitted to the jury. *Cottrell*, 85 F.3d at 1488. It is improper to even mention the term qualified immunity in the jury interrogatory; the jury is "restricted to the who-what-when-where-why type of historical fact issues." *Id.*

Here, the special interrogatory did not ask the jury to decide a legal question, nor did it mention the term qualified immunity. Rather, it asked a factual question-whether Nandlal made an objectively reasonable mistake-albeit at a higher level of abstraction than the Plaintiff would have preferred. Although the district court could have framed the questions more narrowly, e.g., whether Montero grabbed Nandlal's gun belt, or whether Montero was subdued before the shooting, it was not required to. As such, we conclude that the district court did not abuse its discretion in propounding the special interrogatory.

## IV. CONCLUSION

For the reasons discussed, the district court did not abuse its discretion entering judgment as a matter of law in favor of Nandlal. Accordingly, the district court's judgment is affirmed.

**AFFIRMED.**

---

1. It appears that neither the trial judge nor the parties recognized the inconsistency in the verdict. "We have held that if a party challenging this type of verdict has failed to object before the jury is discharged, that party has waived the right to contest the verdicts on the basis of alleged inconsistency." *Walter Int'l* *Prods., Inc. v. Salinas*, 650 F.3d 1402, 1419 (11th Cir. 2011) (internal quotation omitted). Thus, by not objecting, Plaintiff waived challenging the inconsistent verdict. However, as discussed above, even if Plaintiff timely objected, the district court did not abuse its discretion.

WALKER, Circuit Judge, concurring:

I fully agree with the majority's decision to affirm the district court's grant of qualified immunity to Officer Nandlal. However, I arrive at that result by different reasoning. In short, I believe that (1) the district court abused its discretion by giving the jury what amounted to a question of law regarding Officer Nandlal's qualified immunity defense, and (2) that there is no inconsistency between the jury's general verdict and its answer to the special interrogatory. I ultimately conclude that no remand is required, however, because on the undisputed facts adduced at trial, Officer Nandlal was entitled to qualified immunity.

## A. The district court improperly submitted a question of law to the jury

The district court effectively gave the qualified immunity ruling to the jury by asking it to determine whether the officer made an objectively reasonable mistake. The court should have asked the jury to resolve specific factual disputes, such as whether Montero was out of control, or reaching for Nandlal's gun. *See Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (noting that special interrogatories relating to a qualified immunity defense should be limited to the "who-what-when-where-why type of historical fact issues"). Based on the jury's answers to those questions, the court should have determined for itself and without jury input whether Nandlal made an objectively reasonable mistake of fact in believing that Montero posed such a threat to him as to warrant the use of deadly force, and thus whether he had arguable probable cause to use such force. *See Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[O]nce the defense of qualified immunity has been denied pretrial due to disputed issues of material facts, the jury should determine the factual issues without any mention of qualified immunity.").

This method of resolving Nandlal's qualified immunity defense is consistent with the weight of federal precedent, which holds that the "objective reasonableness" of an officer's use of force is a question of law for the court alone to resolve. *See Harris v. Coweta Cty.*, 21 F.3d 388, 390 (11th Cir. 1994) (holding that, for purposes of qualified immunity, the question of "whether the law allegedly violated was clearly established at the time of the complained-about conduct, and, if it was, whether the official's conduct was objectively reasonable in light of the information known to the official at the time," are "objective, albeit fact-specific, inquiries, which we undertake as questions of law") (citation omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury."); *Engleman v. Deputy Murray*, 546 F.3d 944, 947 (8th Cir. 2008) ("Whether an official's conduct was objectively reasonable is a question of law.") (quoting *Ripson v. Alles*, 21 F.3d 805, 808 (8th Cir. 1994)); *Pitt v. District of Columbia*, 491 F.3d 494, 509–10 (D.C. Cir. 2007) ("[W]hether an objectively reasonable officer would have believed his conduct to be lawful, in light of clearly established law ... is a question of law that must be resolved by the court, not the jury."); *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court."); *Cole v. Ruidoso Mun. Sch.*, 947 F.2d 903, 905 (10th Cir. 1991) ("The question[ ] of ... whether the official's acts were objectively reasonable, [is a] question[ ] of law for the court to determine." (quoting *Campbell v.*

*Mercer*, 926 F.2d 990, 992 (10th Cir. 1991))).

This precedent makes perfect sense because, in the context of an alleged violation of the Fourth Amendment, whether an officer's conduct is objectively reasonable in light of the surrounding circumstances is a question of constitutional law that only a court can decide. The reasonableness of an officer's use of force is subject to the same analysis as the Fourth Amendment standard for "reasonable" seizures. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." (citations omitted)); *Zellner*, 494 F.3d at 368 ("If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. If there is such a dispute, however, the factual questions must be resolved by the factfinder." (citations and internal quotation marks omitted)); *cf. Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010) (once all factual disputes regarding qualified immunity defense have been resolved at summary judgment, "the reasonableness of the officer's actions is a pure question of law") (alteration, citation, and internal quotation marks omitted). Thus, the question of what circumstances existed at the time that the defendant effected a seizure is a question of fact for the jury. The question of whether the defendant's actions or perceptions were "objectively reasonable" under those circumstances is a question of constitutional law for the court. *See Heien v. North Carolina*, —— U.S. ——, 135 S.Ct. 530, 542, 190 L.Ed.2d 475 (U.S. 2014) ("The issue is whether the facts satisfy the relevant statutory or constitutional standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.") (alteration, citation, and internal quotation marks omitted).

I believe that the Plaintiff Estate's proposed special interrogatory, which asked discrete factual questions such as whether Montero attempted to grab a gun during the struggle, more accurately reflected the role of special interrogatories in resolving a motion for judgment as a matter of law on qualified immunity grounds. My view is that it was error for the district court to submit to the jury the question of whether Officer Nandlal made an "objectively reasonable mistake," and then to rely upon that finding to conclude that there was qualified immunity.

**B. The general verdict finding liability was not inconsistent with the separate finding that the officer was entitled to qualified immunity**

I further believe that the jury's finding in the general verdict that Officer Nandlal used excessive force can be reconciled with a finding that he is entitled to qualified immunity. I start with the principle that "jury verdicts must be interpreted so as to avoid inconsistency whenever possible." *Freeman v. Chi. Park Dist.*, 189 F.3d 613, 615 (7th Cir. 1999). A court should only take the unusual step of finding verdicts to be inconsistent when "there is 'no rational, non-speculative way to reconcile ... two essential jury findings.' " *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015) (quoting *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984)). If "there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir. 1983) (quot-

ing *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)).

On appeal, the Plaintiff Estate argues that the jury's verdicts are inconsistent because in the general verdict it found that Officer Nandlal "intentionally" used "excessive" force, while in the special interrogatory it found that he had made an "objectively reasonable" mistake of fact as to whether Montero was dangerous. While I believe the jury should not have been asked about the "reasonableness" of Nandlal's conduct, the Estate's position is meritless. Courts frequently reach the conclusion that an officer violated the Fourth Amendment by using excessive force without probable cause, but that he should nonetheless be entitled to qualified immunity because the use of force was justified by arguable probable cause (i.e., reasonable officers could have disagreed as to whether probable existed). *Cf. Turner v. Jones*, 415 Fed.Appx. 196, 201 (11th Cir. 2011) ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. When determining whether an official is entitled to qualified immunity, however, the issue is not actual probable cause, but only arguable probable cause." (citation and internal quotation marks omitted)). In other words, there is nothing inconsistent in a court concluding that the officer's conduct violated the Constitution, but that the officer reasonably believed that it did not. That is precisely what happened here in the context of the use of excessive force. In such a case, the verdicts are not inconsistent, and Fed. R. Civ. P. 49 is not implicated. Rather, the defendant is entitled to seek judgment as a matter of law on his qualified immunity defense under Fed. R. Civ. P. 50. *Wilkerson v. Seymour*, 626 Fed.Appx. 816, 817 (11th Cir. 2015) ("When, as here, the affir-

mative defense of qualified immunity has been properly pled and preserved at trial through a Rule 50 motion, a defendant is entitled to renew a motion for judgment as a matter of law on the basis of qualified immunity." (citation and internal quotation marks omitted)).

To the extent that the majority believes the jury's verdicts were inconsistent because the general verdict form listed a specific dollar amount of damages to which the Estate was entitled, while the special interrogatory afforded Nandlal qualified immunity, I must disagree. The general verdict asked the jury whether Officer Nandlal intentionally used excessive force, and if so the amount of money in damages for which he was liable. The jury found that Nandlal did use excessive force, and calculated a damages amount. The jury then proceeded to answer in the affirmative what was (in the majority's interpretation) a question of fact: Whether Nandlal had made an "objectively reasonable" mistake of fact as to Montero's dangerousness. Relying on that answer, the court (not the jury) confirmed that Officer Nandlal was entitled to qualified immunity, and therefore not liable.

I believe the inconsistency issue would have been even easier to resolve had the jury simply been asked to determine discrete questions of narrative fact in the interrogatories, and the court alone had determined qualified immunity, but in any event there is no inconsistency here. The *jury* found Officer Nandlal liable for damages, but it also made a (consistent) finding, on the basis of which the *court* confirmed that qualified immunity applied. Such results are routinely sustained by appellate courts. *See, e.g., Chaney v. City of Orlando*, 291 Fed.Appx. 238, 240 (11th Cir. 2008) (affirming the district court's grant of defendant police officer's Rule 50 motion for judgment as a matter of law on

qualified immunity grounds, based on the jury's answer to certain special interrogatories, notwithstanding the jury's general verdict that the defendant had used excessive force). They do not fall into the very narrow category of cases in which there is "no rational, non-speculative way to reconcile ... two essential jury findings." *Reider*, 793 F.3d at 1259 (citation omitted).

## C. Notwithstanding its error, the district court's grant of qualified immunity should be sustained based on undisputed facts contained in the record

Ultimately, however, the district court's error in submitting what amounted to a question of law to the jury does not require remand for a new trial. The record developed at trial contains ample evidence from which the only reasonable conclusion is that qualified immunity was warranted. Indeed, the relevant portions of the officers' testimony were largely corroborated by the independent witnesses. Specifically, uncontradicted testimony at trial established that Montero had "red, bloodshot, watery eyes" and "smelled strongly of alcohol" during the time of the arrest. Montero's girlfriend testified that once Montero was told that his car would be towed, a "huge struggle ensued" in which there was "cussing and yelling" and "lots of struggling and fighting." Eventually, Montero, Nandlal, and Nandlal's partner, Blackman, "all ended up down on the ground in a pile again, fighting and [with the officers] trying to cuff him." At one point, Montero yelled "I'm going to rip your balls off," and the officers unsuccessfully tried to stop him with a taser.

Notwithstanding the trial court's denial of summary judgment upon a limited record, I am convinced that the full record at trial properly understood and taken in the light most favorable to the plaintiff com-

pels the conclusion that Nandlal acted with arguable probable cause when he shot Montero. The officers had tried without success every non-lethal method at hand to bring the enraged Montero under control, and therefore it was reasonable for Officer Nandlal to conclude that the use of deadly force was necessary.